McCAUGHNA *v.* OWOSSO & CORUNNA ELECTRIC CO.

Dangerous Premises—Electric Wires—Injury to Trespasser.
   An electric-light company, maintaining its wires over the private grounds of a railroad company, is under no obligation to protect trespassers thereon from injury, and hence is not liable for the death of a trespasser, caused by his coming in contact with a guy wire which had become charged with electricity.

Error to Shiawassee; Smith, J. Submitted January 7, 1902. Decided February 11, 1902.

Case by George B. McCaughna, administrator of the

estate of John Young, deceased, against the Owosso & Corunna Electric Company, for negligently causing the death of plaintiff's intestate. From a judgment for defendant on verdict directed by the court, plaintiff brings error. Affirmed.

*Watson & Chapman* and *Selden S. Miner*, for appellant.

*Lyon & Hadsall,* for appellee.

MONTGOMERY, J. This is an action for negligently causing the death of the intestate. The declaration avers that the defendant maintained a large number of electric wires in the city of Owosso, one of which was located near the south bank of the Shiawassee river and north of the Ann Arbor Railroad, near a brick building known as the "Old Electric Power House," and was fastened to a pole 30 feet high; that, in order to hold said pole in position, said defendant had placed a guy wire connected with said pole at the top, and running southwesterly, fastened at the top of a post 5 or 6 feet high, and that the company had carelessly and negligently placed said guy wire in such a position that it came and was in contact with the electric wire, and thus became a live wire; that said guy wire was located on the west side of a wagon road or track, which was frequently traveled both by foot passengers and by teams; that a person traveling along the track was liable to come in contact with the wire, or liable to put his hand against it, and that it became the duty of the defendant, knowing that said track and grounds were so used as aforesaid, not to locate a guy wire, charged with electricity sufficient to produce death, in and near said track and grounds, so that foot passengers, or any other travelers, would be in danger of coming in contact therewith, or in any manner getting against the same. The declaration further avers that the decedent was passing along the street, highway, and track in a prudent and careful manner, and, without negligence on his part, came in contact with said guy wire, so charged

with electricity, and was instantly killed. On the trial the circuit judge directed a verdict for the defendant, and the case is before us for review on error.

The annexed plat shows the scene of the accident. It will be noted that the premises shown upon this plat are the yards of the railroad company, and devoted to uses closely allied to the railroad business. At the east end of the building marked "Ann Arbor Depot" there was a sign erected reading, in substance, "Dangerous! The public is hereby warned not to trespass upon these grounds, as this is not public property." The plaintiff introduced testimony tending to show that the place marked "Traveled Way" on the plat had been traveled by teams, and sometimes by pedestrians, having business with the proprietors of the coal sheds, wood sheds, stock yards, and, to the east of the two extended side tracks, with the so-called "Asphalt Works." Plaintiff also sought to show that there was a traveled way extending north past the old power house, and that people sometimes drove around the power house, and forded Shiawassee river at a point east of the power house. The testimony, however, shows that it was customary, when attempting to ford the river,—and this would appear to have been but on rare occasions, in the summer season,—to go east between the two extended side tracks, turn to the left, and cross the river, the traveled way being south of the old power house. There was testimony that teams had driven past the old power house, and turned around and come back. But there was nothing in the record to disclose that this was a public way. The most that can be said of the testimony is that people doing business at the old power house might have used these premises. There was nothing to indicate an invitation to the public to enter upon them. The place where the injury occurred is north of the most northerly of the side tracks, and the post supporting the guy wire is indicated as 5 feet and 3 inches high, two telephone poles lying near by. The evidence indicates that the deceased and a companion, having with them two bottles of beer, for some reason sought this secluded spot on the evening in question; and the manner in which the injury was received is not explained, except upon the theory that the deceased reached

up and took hold of this wire, and pulled it down, receiving the shock which caused his death. There is no evidence showing actual knowledge on the part of the officers of the company of the fact that this wire was a live wire. The most that is shown is negligence in failing to discover the condition.

In our judgment, the conclusion of the circuit judge was amply justified by the consideration that these premises were not intended as a resort, and that the defendant owed no duty to the decedent of guarding the premises. The case would fail from the fact that this is not a public way, and the evidence wholly fails to show it. The theory of the plaintiff that the decedent was following this way for the purpose of visiting the asphalt works to the east would show that his presence at the point where the injury was received was wholly unnecessary. We think the case is ruled by *Hargreaves* v. *Deacon*, 25 Mich. 1, and it becomes unnecessary to inquire whether the evidence is sufficient to show due care on the part of the decedent. We place our decision upon the ground that no duty was owing to the decedent to keep these premises in a condition suitable for his occupancy. See, also, *Bledsoe* v. *Railway Co.*, 126 Mich. 312 (85 N. W. 738).

The judgment of the circuit court is affirmed.

Hooker, C. J., Moore and Grant, JJ., concurred. Long, J., did not sit.